UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM B. FUCCILLO, FUCCILLO
ENTERPRISES OF FLORIDA, INC., and
FUCCILLO AUTOMOTIVE GROUP, INC.,

      Plaintiffs,

v.                                  Case No. 8:18-cv-1236-T-36AEP

CENTURY ENTERPRISES INC., and
TRENT SILVER.

      Defendants.

                                       /

## REPORT AND RECOMMENDATION

This matter comes before the Court upon Defendant's, Century Enterprises, Inc. ("Century"), Motion for Attorney Fees and Costs ("Motion") (Doc. 32) and Plaintiffs' William B. Fuccillo, Fuccillo Enterprises of Florida, Inc., and Fuccillo Automotive Group, Inc., (collectively, "Plaintiffs"), Motion in Opposition thereto (Doc. 34). By its' Motion, Century seeks $127,418.50 in attorneys' fees and $857.30 in costs. Two telephonic hearings were held on the Motion on November 12, 2019 and November 18, 2019. Upon consideration, the undersigned recommends that Century's Motion (Doc. 32) be granted in part and denied in part, to the extent that fees be awarded to Century in the amount $34,005.50 plus any additional fees incurred after April 2019.

### I.    Background

On May 22, 2018, Plaintiffs filed the Complaint against Defendants Century and Trent Silver ("Silver") alleging violations of cyberpiracy, trademark infringement, unfair competition in violation of 15 U.S.C. § 1051 (the "Lanham Act"), common law unfair competition, violation

of the Florida Deceptive and Unfair Trade Practices Act, § 501.201-501.213, Fla. Stat. ("FDUTPA"), and violation of Plaintiff William B. Fuccillo's ("Billy Fuccillo") right of publicity under Florida law. (Doc. 1).

Billy Fuccillo owns the Fuccillo Kia dealership ("Fuccillo Kia") located in Wesley Chapel, Florida. Century owns Century Kia dealership ("Century Kia") located in Tampa, Florida, approximately ten miles from Fuccillo Kia. *Id*. at ¶ 29-30. Fuccillo Kia and Century Kia are direct competitors. *Id*. On August 29, 2006, Defendant Silver purchased and registered the domain name "billyfuccillo.com" and set up the domain so that it would redirect web traffic to Century Kia's website, "centurykia.com," which Century uses to advertise and promote its' dealership. *Id*. Upon learning of this redirection, Plaintiffs initiated arbitration against Defendant Silver claiming that he violated Plaintiffs' rights in the Fuccillo name by trafficking in and redirecting the domain name to Century's website. This arbitration did not include Century. The arbitration panel entered an award against Defendant Silver granting Plaintiffs the transfer of the domain name. *Id*.

On May 22, 2018, Plaintiffs filed the instant action against both Defendants Silver and Century. Plaintiffs alleged five counts against Century for willfully and intentionally redirecting web traffic from the domain "billyfuccillo.com" to "centurykia.com." *Id*. ¶¶ 35-36. Both Defendant Silver and Century contacted Plaintiffs numerous times and denied Century's involvement in the scheme. (Doc. 32 ¶ 5). Century even offered to provide affidavits stating that Century Kia was not involved in the redirection of the domain and was unaware of Defendant Silver's actions. *Id*. Additionally, Defendant Silver publicly admitted in a Tampa Bay Business Journal article that Century had no involvement in the scheme and contacted Plaintiffs' counsel on three different occasions expressing desires to quickly and amicably resolve the matter. *Id*. However, despite these efforts, Plaintiffs chose to proceed to litigate the

2

case and engage in discovery.  On July 18, 2018, Century inevitably filed a Motion to Dismiss

(Doc. 18). On September 27, 2018, Plaintiffs received the discovery responses from Century.

Almost six months after receiving Century's discovery responses, on March 8, 2019, the Court

granted Century's Motion to Dismiss (Doc. 28) finding that Plaintiffs failed to assert factual

allegations supporting their claims against Century. The Court dismissed all counts against

Century without prejudice and allowed Plaintiffs leave to file an amended complaint. *Id.*

Plaintiffs elected not to file an amended complaint against Century. Century then filed a Motion

for Attorney's Fees and Costs (Doc. 32). By the instant motion, Century now seeks an award

of attorneys' fees in the amount of $127,418.50 and $857.30 in costs claiming that they are

entitled to their fees and costs under both the Lanham Act and the FDUTPA due to the

exceptional nature of this case. *Id*. Plaintiffs filed their Motion in Opposition (Doc. 34),

asserting that this case is not exceptional, and that Plaintiffs acted reasonably in pursuing their

claims against Century. A telephonic hearing on these motions was held on November 12, 2019.

After the hearing, Plaintiffs filed a Motion for Leave to File Sur-Reply (Doc. 49) to introduce

additional evidence of correspondence between the parties.[1]   Century filed a response in

opposition thereto (Doc. 53). A subsequent hearing was held on these additional motions on

November 18, 2019.  At the hearing, the Court granted Plaintiffs' Motion for Leave to File Sur-

Reply (Doc. 49). Upon due consideration of the record, it is recommended that Century's

Motion (Doc. 32) be granted in part and denied in part.

---

[1] Plaintiffs sought to introduce a copy of an email correspondence from January 16, 2019, in which Plaintiffs offer to dismiss their claims against Century without prejudice to Century's right to pursue attorney's fees and costs. (*See* Doc. 56).

3

## II.    Legal Standard

### A. Lanham Act

Under the Lanham Act, "[t]he court in *exceptional* cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117 (emphasis added). The Eleventh Circuit has traditionally interpreted the Lanham Act's exceptional case standard to allow for the award of fees "only in exceptional circumstances and on evidence of fraud or bad faith." *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982). The Eleventh Circuit later stated that the legislative history of the Lanham Act suggests that exceptional cases are those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (citing *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001). Even if a court determines a case qualifies as exceptional, the ultimate decision to award attorney's fees "remains within the discretion of the trial court." *Id*. In *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, the Supreme Court read "exceptional case" to mean "simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. 545 (2014). Whether a particular case stands out from the others is left to the discretion of district courts. *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)).

### B. Florida Deceptive and Unfair Trade Practices Act, "FDUTPA"

Under the FDUTPA, a prevailing party is entitled to reasonable attorney's fees and costs in civil litigation arising from a violation of the act. Fla. Stat. § 501.2105(1). To recover attorney's fees, the attorney for the prevailing party must submit a sworn affidavit regarding the time expended litigating a civil action involving a FDUTPA claim. *See id*. § 501.2105(2).

The fees recoverable are those devoted to the entire action, not merely the FDUTPA claim, "unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501." *Alhassid v. Bank of Am., N.A.*, 688 F.App'x 753, 757 (11th Cir. 2017) (citing *Diamond Aircraft Industries, Inc. v. Horowitch* 107 So. 3d 362, 370 (Fla. 2013) (quotation and emphasis omitted)). "Even where a plaintiff's FDUTPA complaint is dismissed with prejudice as sanctions, the defendant is the prevailing party and the court must assess whether an award of fees is warranted." *Atmos Nation, LLC v. All Rise Record, Inc.*, 2017 WL 3635114 at *3 (S.D. Fla July 6, 2017). (citing *Covington v. Arizona Beverage Co., LLC* 2011 WL 11796786 at * 2 (S.D. Fla. Aug. 25, 2011). The award of fees under the FDUTPA, however, remains discretionary. *Id.* at *4. The court must consider seven factors when determining whether to exercise discretion to award attorney's fees under FDUTPA. *Id.* (citing *Humane Society of Broward County, Inc. v. Florida Human Society*, 951 So.2d 966, 971-2 (Fla. 4th DCA 2007). They are as follows:

> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
> (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> (6) whether the defense raised a defense mainly to frustrate or stall;
> (7) whether the claim was brought to resolve a significant legal question under FDUTPA law.

*Atmos Nation, LLC v. All Rise Record, Inc.*, 2017 WL 3635114 at *3 (S.D. Fla July 6, 2017).

### III.    Discussion

#### A. Award of Fees under the Lanham Act and the FDUTPA

Century argues that it is entitled to attorney's fees under both the Lanham Act and the

FDUTPA.  Specifically, Century requests this Court to consider a variety of factors when

determining the exceptional nature of the case, including:

> (1) whether the plaintiff failed to conduct an adequate pre-suit investigation; (2) a
> defending party's culpability; (3) whether the plaintiff continued to maintain an
> infringement action where the plaintiff knew or should have known that the claims were
> baseless; (4) the history of the litigation; and (5) deterrence of future litigation abuse.

(Doc. 32 ¶ 11).

However, it is ultimately at the discretion of the court to determine if the case is exceptional

and whether to award fees. *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545

(2014). An "exceptional case" is one that "stands out from others" and that determination is left

to the discretion of district courts. *Id.*

Century contends that Plaintiffs' inadequate pre-suit investigation deems this case

exceptional and that Plaintiffs should have discussed the prospective claims with Century

before filing suit. While Century's argument regarding the adequacy of Plaintiffs' pre-suit

investigation is well-taken, this alone does not rise to the level of identifying this matter as an

exceptional case. Given what was known and unknown at the time Plaintiffs initially filed this

case, arguably Plaintiffs could have reasonably drawn an inference that Century was involved

in the redirection scheme. Century Kia and Fuccillo Kia are direct competitors. Even if

Plaintiffs had reached out and discussed these allegations with Century, the Plaintiffs were not

required to accept Century's statements of denial of involvement as true.

Century's argument that Plaintiffs' persistence with litigation even after being informed

by Defendants that Century had no involvement with the matter, is also not grounds to warrant

this case exceptional.  While the record demonstrates that Century made successful efforts to

contact Plaintiffs and deny involvement, the Court does not agree that this alone demonstrates the "recklessness" on the part of Plaintiffs in continuing to litigate and engage in discovery. Plaintiffs are not required to take the statements made by Century and Defendant Silver at face value and cease litigation based on those assurances alone. Without discovery and additional evidence pointing to the contrary, Plaintiffs had no basis, other than Defendants' word, that there was no involvement on the part of Century in the redirection of Plaintiffs' domain. As such, the Court does not find Plaintiffs' pre-suit investigation efforts, or lack thereof, to be the basis for finding this matter to be an exceptional case.

However, the Court does find that upon receipt of the discovery the Plaintiffs had the requisite knowledge to determine that Century was not involved in the matter and that any further pursuit of the claims against Century would be frivolous.  Significantly, Plaintiffs received responses to their discovery requests on September 27, 2018. Specifically, Plaintiffs' requests for production sought:

> Any and all non-privileged communications concerning or relating to www.billyfuccilo.com from January 1, 2006 through the date of this request between you and anyone else, including, but not limited to the Defendant, Trent Silver.

(Doc. 32, Ex. 17 ¶ 4).

At the hearing on November 12, 2019, Plaintiffs acknowledged that they did not receive any evidence of communications between Century and Defendant Silver. Plaintiffs also admitted that upon the receipt of Century's discovery, it became apparent that the record supported the Defendants' earlier contentions that Defendant Silver acted alone in procuring the Fuccillo domain and redirecting the internet traffic to Century Kia's website.  Further, Plaintiffs acknowledged such in their correspondence with Century in the January 16, 2019 letter, in which Plaintiffs state that "based on the responses to the abbreviated discovery sought, Fuccillo is satisfied that Century likely did not benefit from the redirected domain name and

that *it also appears that Silver registered the billyfuccillo.com domain name and redirected it to resolve to centurykia.com on his own initiative and without Century's involvement.*" (Doc. 56, Ex. A ¶ 2) (emphasis added). Upon the realization that the claims were frivolous, Plaintiffs should have voluntarily dismissed the case against Century. Instead of voluntarily dismissing the case, Plaintiffs proceeded to drag on with litigation until the Court inevitably expended time and resources entering a detailed Order dismissing the claims against Century. (*See* Doc. 28).

As such, the unnecessary continuance of litigation by the Plaintiffs renders this case exceptional. In *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, the Supreme Court found a case to be exceptional if it is "simply one that stands out from others" with respect to the strength of the party's positions or the "the unreasonable manner in which the case was litigated." 572 U.S. 545 (2014). Here, Plaintiffs continued to litigate a case they knew to be frivolous and expended additional costs and fees for Defendants. Thus, the case is exceptional and stands out from others in the unreasonable nature of the Plaintiffs actions.

Similarly, under the FDUTPA, the court must consider several factors including whether the claim brought was frivolous, unreasonable, or groundless. *Atmos Nation, LLC v. All Rise Record, Inc.*, 2017 WL 3635114 at *3 (S.D. Fla. July 6, 2017). As stated, upon the initial filing of the case, the claims against Century were not unreasonable or frivolous, rather, the claims became clearly unreasonable and frivolous when Plaintiffs continued with litigation despite knowing, upon the production of the relevant discovery, that Century was not involved in the redirection of the Fuccillo domain name. It must be noted, that not only did Plaintiffs recognize upon the production of the discovery that " . . . Silver registered the billyfuccillo.com domain name and redirected it to resolve to centurykia.com on his own initiative and without Century's involvement," Plaintiffs made no other efforts in the litigation to support the contrary. (Doc. 56, Ex. A ¶ 2). As such, it was entirely unreasonable for Plaintiffs to continue with an

action that they knew was not grounded in any colorable facts.  Century is therefore entitled to recover fees under the FDUTPA as well.

Given the exceptional nature of the case and the unreasonable actions of Plaintiffs, the undersigned recommends that Century be awarded attorney's fees spanning from the time period after Plaintiffs became aware the claims against Century had no merit, which is the date Plaintiffs received Century's discovery in September, up to the present litigation including time spent preparing and attending the hearings held on this matter.

### B. Reasonable Hourly Rate and Number of Hours Expended

Given that the Court finds fees should be awarded, the Court must next calculate a reasonable award of attorney's fees. To calculate a reasonable award of attorney's fees, courts multiply the reasonable hourly rate by the reasonable hours expended.[2]  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292,

---

[2] When calculating the reasonably hourly rate and the number of compensable hours that are reasonable, courts in the Eleventh Circuit are guided by the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Norman*, 836 F.2d at 1299 (noting that the *Johnson* factors may still "be considered in terms of their influence on the lodestar amount"); *see Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (*per curiam*) ("In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson* . . . ."); *see Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (*per curiam*) (stating that "[a]lthough its balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate"); *see also Hensley*, 461 U.S. at 434 n.9 (noting many of the *Johnson* factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate").  These factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

1299 (11th Cir. 1988).  In determining this lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman*, 836 F.2d at 1299 (citations omitted).  In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists.  *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *See Norman*, 836 F.2d at 1299. At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work; instead, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.*

After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation.  In submitting a fee petition, counsel must exercise proper billing judgment and thus exclude any hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434; *Norman,* 836 F.2d at 1301.  Accordingly, counsel may not bill any hours to their adversary which they would not bill to their client.  *Hensley*, 461 U.S. at 434.  Where the time or fees claimed appear expanded or lack documentation or testimonial support, a court may make a fee award based on its own experience and knowledge.  *Norman,* 836 F.2d at 1303 (citation omitted).

### i.    Reasonable Hourly Rate

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Here, Century

requests an hourly rate of $500 and $525 per hour for attorney Ernest J. Marquart (Doc. 32). In

his declaration, Mr. Marquart states that he has over 28 years of business litigation experience

practicing in both federal and state courts and served as his firms' managing partner for several

years. (Doc. 32-1).   Century contends that the hourly rates of $500 and $525 comport with the

market rate in the Tampa and are reasonable. Additionally, Century submitted the affidavit of

Jason P. Stearns who asserts that the rates requested by Century are reasonable and reflect the

prevailing market rate and level of experience and skill of the attorneys in this matter. (Doc.

32-2). Century also cites to decisions from the Southern District of Florida in which the courts

affirmed similar rates requested. *See Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848

(11th Cir. 2018) (affirming an award of the prevailing Miami market rates between $645 and

$675 in a Lanham Act case); (*See also*, *Tobinick v. Novella*, 2018 WL 6978637 at *4-5, (S.D.

Fla. Nov. 20, 2018), *report and recommendation adopted*, 2018 WL 6978629 (S.D. Fla. Dec.

6, 2018) (awarding $650 per hour for a partner and $400 per hour for a senior associate in a

trademark case).

      However, the Middle District of Florida has often determined that a reasonable rate is

generally between $400 - $475 for experienced attorneys in Lanham act cases. *See MWR*

*Holdings, LLC v. Academy of Tampa, Inc.*, Case No. 8:14-cv-1325-T-30MAP, 2014 WL

5590998 at *1, (M.D. Fla. Nov. 3, 2014) (hourly rates between $400 and $475 were reasonable

given the respective attorneys' experience and the market rate in Tampa, Florida); *Intenze*

*Products, Inc. v. Dead Man Supplies Corp.*, Case No. 8:15-cv-1074-T-36AAS, 2017 WL

759036 at * 4, (M.D. Fla. Feb. 9, 2017) *report and recommendation adopted*, 2017 WL 749496

(M.D. Fla. Feb. 27, 2017) (reducing the hourly rate from $550 to $475 for attorney with 38

years of experience litigating and prosecuting intellectual property cases). Given the unique

nature of this case, in conjunction with the prevailing rates in the Middle District of Florida

Tampa Division, and the undersigned's own knowledge and experience, the hourly rate will be reduced from the requested $500 and $525 to a single hourly rate of $475 for Mr. Marquart.

Century also seeks an hourly rate of $330 and $350 for attorney Jeff Fabian (Doc. 32). Century states that Mr. Fabian has over 7 years of experience and was named partner during the pendency of this case. *Id*. Mr. Fabian spent a significant amount of time litigating the case and the hourly rate requested for Mr. Fabian is in line with the market rate for attorneys in the Tampa legal market with similar experience, skill, and education. *Baby Buddies Inc, v. Toys "R" Us, Inc.*, Case No. 8:03-cv-1377-T-17MAP, 2011 WL 4382450 at *7-9, (M.D. Fla. Aug. 9, 2011) *report and recommendation adopted,* 2011 WL 4382285 (M.D. Fla. Sept. 20, 2011) (hourly rates between $350 and $475 are reasonable for local counsel who was a partner at the firm); *Intenze Products, Inc. v. Dead Man Supplies Corp.*, Case No. 8:15-cv-1074-T-36AAS, 2017 WL 759036 at * 4, M.D. Fla. Feb. 9, 2017) *report and recommendation adopted*, 2017 WL 749496 (M.D. Fla. Feb. 27, 2017) (awarding hourly rate of $300 for an partner with over 5 years of experience). The Court finds that Mr. Fabian's hourly rate is reasonable and reflects the prevailing market rate and exceptional nature of this case. As such, Mr. Fabian will be awarded his original hourly rate of $330.

Additionally, Century seeks hourly rates of $410 for attorney Brian Schaffnit, $350 for attorney Seth Traub, and $240 for paralegal Mandy Desilles (Doc. 32). Mr. Schaffnit is a partner at his law firm and has over 15 years of complex commercial litigation experience. *Id*. Mr. Taub has over 12 years of experience and is also a partner at his law firm. *Id*. at 17. As such, the Court finds Mr. Schaffnits' and Mr. Traubs' hourly rates to be reasonable for the hours expended in this action. *See CarMax Auto Superstores, Inc. v. StarMax Finance, Inc.*, 192 F. Supp 3d.1279, 1285 (M.D. Fla. June 21, 2016) (awarding fees of $345 for an attorney with 14 years of experience and $400 for attorney who is a partner with 12 years of experience); *MWR*

*Holdings, LLC v. Academy of Tampa, Inc.*, Case No. 8:14-cv-1325-T-30MAP, 2014 WL 5590998 at *1, (M.D. Fla. Nov. 3, 2014) (hourly rates between $400 and $475 were reasonable given the respective attorneys' experience and the market rate in Tampa, Florida).

However, Ms. Desille's hourly rate is reduced from $240 to $175 to better reflect the prevailing market rate of the Middle District of Florida Tampa Division. *Blowbar Inc. v. Blow Bar Salon Inc.*, Case No. 8:13-cv-1430-T-17EAJ, 2013 WL 6244531 at *5, (M.D. Fla. Dec. 3, 2013) (awarding a fee of $250 and $150 for paralegals involved in Lanham Act case). Therefore, based on all the evidence in the record and knowledge of reasonable hourly rates, the Court finds that the following are reasonable hourly rates: $475 for Ernest Marquart, $330 for Jeff Fabian, $410 for Brian Schaffnit, $350 for Seth Traub, and $175 for paralegal Mandy Desilles.

### c.      Hours Reasonably Expended

Century next asserts that 288 hours were reasonably and necessarily expended by Century (Doc. 32). Specifically, Mr. Marquart expended 186.2 hours, Mr. Fabian expended 98.6 hours, Mr. Traub expended 2.8 hours, Mr. Schaffnit expended 0.5 hours, and Ms. Desilles expended 0.2 hours (Doc. 32). However, given the above findings, the Court finds that fees should only be awarded from the time Plaintiffs became aware that their claims against Century were frivolous, which the Court finds such time accrued after the receipt of Century's discovery. Specifically, the Court finds it appropriate to award any fees after October 1, 2018 to the present date.  Upon review of the record, such time would include 80.6 hours in addition to the hours expended in conjunction with the hearings and filings on the instant motion (Doc. 32, Ex. A at 55-82).  Certainly, "excessive, redundant or otherwise unnecessary" hours should be excluded from the amount claimed by a plaintiff.  *Hensley*, 461 U.S. at 434.  However, upon review of

the billing records in this matter, none of the billing entries appear excessive, redundant, or otherwise unnecessary (Doc. 32, Ex. A).

Based on the foregoing, the lodestar for Mr. Marquart fees is the reasonable hourly rate of $475 multiplied by the 50.7 hours reasonably expended, totaling $24,082.50. The lodestar for Mr. Fabian's fees is the reasonable hourly rate of $330 multiplied by the 27.1 hours reasonably expended, totaling $8,943.00. The lodestar for Mr. Taub's fees is the reasonable hourly rate of $350 multiplied by the 2.8 hours reasonably expended, totaling $980.00[3]. As such, the total reasonable fee award is $34,005.50.

### C.     Costs

Next, Century seeks $857.30 in costs, as set forth in Century's itemized list of costs (Doc. 32 ¶ 8). Courts are limited in taxing costs to those costs enumerated in 28 U.S.C. § 1920. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1259 (11th Cir. 2011). Notably, costs are "limited to relatively minor, incidental expenses" as defined by 28 U.S.C. § 1920. *Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). A district court thus may not award costs beyond the limited scope set by Congress in 28 U.S.C. § 1920. *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-J-37JBT, 2012 WL 2913179, at *2 (M.D. Fla. June 13, 2012); *cf. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987), *superseded on other grounds by* 42 U.S.C. § 1988(c) (finding that 28 U.S.C. § 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court

---

[3]Century's Motion for Attorney's Fees and Costs (Doc. 32) includes only the attorney's billing cycles from May 2018 through April 2019. Attorneys Seth Traub, Brian Schaffnit, and paralegal Mandy Desilles did not complete any work on the case from the October 2018 billing cycle to the April 2019 billing cycle, the time period with which the Court is awarding Century its' fees. As such, their award of fees is not included in this Report and Recommendation. To the extent Mr. Taub, Mr. Schaffnit, and Ms. Desilles completed work in this case after the April 2019 billing cycle up to the date of this Order, those fees should be awarded at the reasonable rates identified above.

may tax as a cost under the discretionary authority granted in Rule 54(d)).  Specifically, pursuant to 28 U.S.C. § 1920, the following may be taxed as costs:

> (1) Fees of the clerk and marshal;

> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

> (3) Fees and disbursements for printing and witnesses;

> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

> (5) Docket fees under [28 U.S.C. § 1923]; [and]

> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses. *Loranger*, 10 F.3d at 784.  Failing to provide "sufficient detail or supporting documentation" for taxing costs can lead to a denial of them. *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-307-Orl-40GJK, 2016 WL 7325544, at *2 (M.D. Fla. Aug. 31, 2016).

As the prevailing party, Century seeks to recover its taxable costs in the amount of $857.00 pursuant to Rule 54(d) (Doc. 183). Specifically, Century seeks to recover costs for Westlaw legal research and PACER Federal District Court charges. (Doc. 32). Under the 28 U.S.C. § 1920, costs for Westlaw research and PACER charges are not recoverable. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees ... are clearly nonrecoverable under § 1920"); *Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc.,* Case No. 06-61231-CIV, WL 680948 at *15, (S.D. Fla. Feb. 24, 2010) ("Plaintiff requests Westlaw fees ... for online legal research [and] PACER fees ... for accessing the Court's docket ... As there is

no explicit authorization to grant these costs under § 1920, they are not recoverable").

Therefore, the undersigned recommends that costs be limited to those enumerated in 28 U.S.C.

§ 1920, and Century's request for costs be denied. For the foregoing reasons, it is hereby

RECOMMENDED:

1. Century's Motion for Attorney Fees and Costs (Doc. 32) be GRANTED IN PART

AND DENIED IN PART, as follows:

a. Century be awarded attorneys' fees in the amount of $34,005.50[4] plus any

additional fees incurred after April 2019.

B. Century be allowed to file a supplemental petition for any fees incurred after

April 2019.

IT IS SO REPORTED in Tampa, Florida, on this 15th day of January, 2020.

ANTHONY E. PORCELLI
United States Magistrate Judge

---

[4] This amount reflects Century's fees from the October 2018 billing cycle to the April 2019 billing cycle included in Century's Motion (Doc. 32, Ex. A).

16

## <u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C).  Under 28 U.S.C. Section 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.

cc:    Hon. Charlene E. Honeywell
       Counsel of Record