# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

WILLIAM B. FUCCILLO,
FUCCILLO ENTERPRISES OF FLORIDA
INC., and FUCCILLO AUTOMOTIVE
GROUP, INC.,

        Plaintiffs,                     Case No. 8:18-cv-1236-T-36AEP

v.

TRENT SILVER,

        Defendant.
_____/

## ORDER

This matter is before the Court on Plaintiffs' Notice of Second Motion for Summary Judgment (Doc. 62). Also pending is Plaintiffs' Notice of Motion for Acceptance of Statement of Undisputed Material Facts (Doc. 65). Despite being ordered to do so, Defendant Trent Silver failed to respond to the Second Motion for Summary Judgment. *See* Doc. 67. In their second summary judgment motion, Plaintiffs request this Court grant summary judgment in their favor as to liability on their claims against Defendant, Trent Silver, for violations of the Anticybersquatting Consumer Protection Act (Count I) and Florida's right-of-publicity statute (Count V). Doc 62.

Having considered the motion, the exhibits filed in support, and otherwise being fully advised, the Court will grant Plaintiffs' Motion for the Court to accept Plaintiffs' Statement of Undisputed Facts in lieu of a "stipulation of agreed facts" (Doc. 65) and grant in part and deny in part Plaintiffs' Second Motion for Summary Judgment as to liability on Counts I and V (Doc. 62).

I.      **BACKGROUND**[1]

A.      **Procedural History**

Plaintiffs, William B. Fuccillo ("Billy Fuccillo"), Fuccillo Enterprises of Florida, Inc. ("Fuccillo Enterprises"), and Fuccillo Automotive Group, Inc. ("Fuccillo Auto") (collectively, "Plaintiffs"), filed this action against Trent Silver[2] ("Silver" or "Defendant") in May 2018. Doc. 1. In their Complaint, Plaintiffs assert five causes of action against Silver based on the alleged improper use of Plaintiffs' trademarks, "Billy Fuccillo" and "Fuccillo," through the registration of the domain name "billyfuccillo.com." Doc. 1 ¶¶ 38–73. From Plaintiffs' perspective, the names "Billy Fuccillo" and "Fuccillo" are marks which have acquired a secondary meaning through the development of the Fuccillo brand, the use of Plaintiff Billy Fuccillo's name and presence in advertising, and the registration and operation of the domain name "fuccillo.com" from November 1997 through the present. *Id*. ¶¶ 9–18, 22–24. As a result of this belief, upon the discovery that defendant Silver had registered the domain name billyfuccillo.com, Plaintiffs, Billy Fuccillo and Fuccillo Auto, engaged in arbitration to retain ownership of the domain name. *Id.* ¶ 31; *see also id.* at 27–41. Plaintiffs allege Silver registered the domain name in bad faith with the intent that the link redirect Plaintiffs' potential customers to competitor Century Kia's website. *Id.* ¶ 29. The arbitration panel affirmed Plaintiffs' view that the domain name had been registered in bad faith and ordered it be transferred to Plaintiffs Billy Fuccillo and Fuccillo Auto. *Id.* at 38–39. Plaintiffs subsequently filed this lawsuit. Doc. 1. Silver, responding *pro se*, filed an Answer and Affirmative

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits. For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.
[2] This action was originally filed against an additional Defendant, Century Enterprises, Inc. ("Century"), which moved to dismiss the claims against it. Doc. 18. The Court granted Century's motion and dismissed Century as a party. Docs. 28; 31.

Defenses to the Complaint. Doc. 19. Thereafter, Plaintiffs sought summary judgment against Silver on the first and fifth counts of the Complaint, which the Court denied without prejudice. *See* Docs. 44; 58. Plaintiffs' Second Motion for Summary Judgment is now before the Court. *See* Doc. 62. Silver did not respond to the motion.

### B.     Undisputed Facts

Defendant Silver is an individual with a residence or place of business in Tampa, Florida. Doc. 1 ¶ 8; Doc. 19 ¶ 8. On August 29, 2006, Silver registered the domain name billyfuccillo.com with GoDaddy.com, although Plaintiffs never authorized him to use the marks "Fuccillo" and "Billy Fuccillo" or otherwise consented to his registration of the domain. Doc. 1 ¶¶ 26, 37; Doc. 19 ¶¶ 26, 37; Doc. 62-4 at 2. On March 5, 2018, a customer informed Plaintiffs that she had been redirected to Century Kia's website after clicking on the billyfuccillo.com domain. Doc. 62-5. After receiving this notice, Plaintiffs Billy Fuccillo and Fuccillo Auto filed, on March 27, 2018, a complaint with FORUM arbitration regarding the disputed domain name, pursuant to GoDaddy.com, LLC's registration agreement. Doc. 62-2 at 29–30.

During the arbitration proceeding, Silver was represented by attorney Philip Nicolosi of Philip Nicolosi Law, P.C., through whom he submitted two substantive responses to the allegations presented in Plaintiffs' arbitration complaint. *Id.*; Doc. 62-8; Doc. 62-9. After reviewing the parties' submissions, the three-person arbitration panel made the following findings:

> With principal locations in the states of New York and Florida, Complainant operates a large automotive retail and service business in the United States. From its earliest endeavors beginning by at least 1989 in New York, Complainant has conducted business in conjunction with the trademarks FUCCILLO and BILLY FUCCILLO, which are based on the surname Fuccillo of the owner.
>
> The disputed domain name, <billyfuccillo.com>, is owned by Respondent and was registered by him on August 29, 2006. The name now redirects Internet users to another domain name, <centurykia.com>, that hosts a

3

> website offering automotive products and services that compete directly with those of Complainant.

Doc. 62-2 at 33–34. In rendering its decision, the arbitration panel analyzed the following issues: whether the domain name was identical or strikingly similar to Plaintiffs' marks, whether Silver had any interest in the name, and whether the domain name was registered and being used in bad faith. *Id.* at 34. After receiving written submissions from both sides, the arbitration panel concluded: 1) the domain name billyfuccillo.com was identical or confusingly similar to the trademarks "fuccillo" and "billy fuccillo" in which Fuccillo Auto and Billy Fuccillo had rights; 2) Silver had no rights or legitimate interests in billyfuccillo.com; and 3) Silver registered and used the billyfuccillo.com domain name in bad faith. *Id.* at 36–38. As a result of these findings, the arbitration panel ordered that the domain name billyfuccillo.com be transferred from Silver to Plaintiffs Fuccillo Auto and Billy Fuccillo.[3] *Id.* at 39.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

---

[3] Plaintiff Fuccillo Enterprises was not a party to the arbitration.

4

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

Although the instant motion for summary judgment is unopposed, the Court is obligated to ascertain whether Plaintiffs are entitled to judgment on the merits. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

### III.  DISCUSSION

#### A.  Motion to Accept Plaintiffs' Statement of Undisputed Facts

Plaintiffs request this Court accept their statement of undisputed material facts in lieu of a "stipulation of agreed material facts." Doc. 65.  As Plaintiffs correctly point out, the Court's Case Management and Scheduling Order required the parties to "file a stipulation of agreed material facts signed by the movant and the parties opposing summary judgment."  *See* Doc. 27 at 6. According to Plaintiffs' motion, Silver has not responded to Plaintiffs' communications regarding the proposed stipulated facts.  In light of Silver's failure to respond to Plaintiffs' proposed statement of undisputed facts, the Court excuses Plaintiffs from the requirement of submitting a joint statement of undisputed facts.

5

Additionally, the Court notes that Silver has not responded to the pending summary judgment motion despite being ordered to do so. *See* Doc. 67.  Fed. R. Civ. P. 56(e) states that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  A movant, however, still must prove its motion with evidentiary support. *See One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d at 1102 ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.") (citation omitted).  To the extent that Plaintiffs' motion requests the Court to accept their statement of facts as undisputed, the Court grants the motion as to any fact submitted by Plaintiffs which is supported by evidence. *See id.* at 1101 (district court "must ensure that the motion itself is supported by evidentiary materials").

  **B.**  **Collateral Estoppel – Issue Preclusion**

In their first motion for summary judgment, Plaintiffs argued that the arbitration decision should be given *res judicata* effect to establish their claims in this action.  However, as noted by the Court's prior order denying the initial motion, Plaintiffs failed to establish under which form of the doctrine they were seeking relief—issue preclusion or claim preclusion. Docs. 44 at 11–14; 58 at 11–12; *see also Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) (noting that "[r]es judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')"). Plaintiffs now clarify that they are requesting this Court rely upon and enforce against Silver the findings and conclusions of the arbitration panel based on the preclusive doctrine of issue preclusion. Doc. 62. at 14-22. Therefore, before the Court

considers Plaintiffs' claims on the instant motion, the Court must determine whether the arbitration decision may be given preclusive effect.

"The doctrine of collateral estoppel precludes a party from relitigating an issue that was fully litigated in a previous action." *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir. 1982). The doctrine may be asserted by either a plaintiff or a defendant. *Id.* Offensive collateral estoppel, which Plaintiffs seek to enforce here, is the situation where a plaintiff prevents a defendant from relitigating an issue that the defendant lost in a prior case. *Id.* The doctrine of collateral estoppel, or issue preclusion, may be asserted when: "(1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior action; (3) determination of the issue was a critical and necessary part of the judgment in the prior litigation; and (4) the party against whom the prior decision is asserted had a full and fair opportunity to litigate the issue in the prior action." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)). Plaintiffs argue each of these factors is satisfied here such that the arbitration panel's findings and conclusions should be applied in this litigation to preclude Silver from relitigating the same issues that were resolved by the arbitration.

The determination of the issue preclusive effect an arbitration proceeding will have on a federal claim requires a case-by-case approach "focusing on the federal interests in insuring a federal court determination of the federal claim, the expertise of the arbitrator and his scope of authority under the arbitration agreement, and the procedural adequacy of the arbitration proceeding." *Id.* at 1361; *see also Deweese*, 688 F.2d at 734 ("[T]he application of collateral estoppel is committed to the sound discretion of the district court."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985) ("[I]t is far from certain that arbitration proceedings will have

any preclusive effect on the litigation of nonarbitrable federal claims."). However, the Eleventh Circuit has held that when an arbitration proceeding "affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated." *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985).

The Court previously expressed reservations concerning Plaintiffs' proof on the collateral estoppel factors, particularly with regard to the third and fourth factors. *See* Doc. 58 at 15. In the instant motion, Plaintiffs have now adequately addressed the Court's concerns, and the Court finds that the preclusive effect of collateral estoppel may be applied here.

> 1. *Is the issue at stake identical to the one involved in the prior litigation?*

With respect to the first prong, the arbitration panel identified the following elements for its consideration: whether the domain name was identical or strikingly similar to Plaintiffs' marks, whether Silver had any interest in the name, and whether the domain name was registered and being used in bad faith. Doc. 62-2 at 34. These elements are essentially the same as required to prove a violation under the ACPA. *See Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (an ACPA plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit). Courts have recognized that when a previously adjudicated claim requires the identification of elements that "closely mirror" the requirements of the present cause of action, the first element of issue preclusion has been met. *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993*), as corrected on reh'g* (June 22, 1993). Because the elements the arbitration panel

considered closely mirror the elements of an ACPA claim, the first prong of the collateral estoppel analysis has been met.

> 2. *Was the issue actually litigated in the prior action?*

Prong two is similarly satisfied as the issue was actually litigated in the arbitration. The Eleventh Circuit holds the view that "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (AM. LAW INST. 1982)). In this instance, Plaintiffs Billy Fuccillo and Fuccillo Auto properly raised an issue concerning ownership of the domain name billyfuccillo.com with FORUM arbitration who solicited a response from Silver before making its determination. Doc. 1 at 29–30. All parties were represented by counsel and presented with the opportunity to, and in fact did, submit statements and documentation supporting their claims and defenses. *Id.* Therefore, the second element has been met as the issue was actually litigated. *See Freecharm Ltd. v. Atlas Wealth Holdings Corp.*, 499 F. App'x 941, 944 (11th Cir. 2012) (finding the second prong of issue preclusion to have been met when an arbitration award showed that the "factual issues [of the present claim] were actually litigated in the arbitration").

> 3. *Was the issue a critical and necessary part in the prior litigation?*

"The third prong requires that the determination of the issue in the prior litigation to have been a critical and necessary part of the judgment." *In re St. Laurent*, 991 F.2d at 676. The Court previously questioned whether bad faith intent in registering and using the domain name was a critical part of the arbitration. Doc. 58 at 2. Plaintiffs contend it was. The ACPA identifies nine factors courts may consider in determining whether there is "bad faith intent" in a person's use of

9

another's mark in conjunction with a cyberpiracy claim. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX).[4]

Plaintiffs contend that six of the nine factors used to determine "bad faith intent" in an ACPA claim were relevant to the arbitration panel's determinations. Doc. 62 at 20. The Eleventh Circuit has counseled that the bad faith factors merely provide persuasive guidance and has acknowledged that a court need not determine the presence of all to find bad faith. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1244 (11th Cir. 2009) ("As other courts have observed, the statute clearly makes consideration of those factors permissive ('may consider' being the key language)."); *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 779-80 (11th Cir. 2015) (acknowledging that only four of the nine factors listed in 15 U.S.C. § 1125(d)(1)(B)(i) were relevant to the case and finding that the defendant had acted in bad faith based upon evaluation of those factors).

---

[4] The nine factors are: "(I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)." 15 U.S.C. § 1125(d)(1)(B)(i).

Here, Plaintiffs submit that the first, second, third, fourth, fifth, and ninth factors of § 1125(d)1)(B)(i) were specifically considered by the arbitration panel and were critical to its determination that Silver registered and used the "billyfuccillo.com" domain name with a bad faith intent to profit. Considering the first factor—whether Silver "has a trademark or other intellectual property rights" in the domain name—the arbitration panel concluded that Silver "has no rights or legitimate interests in the disputed domain name." Doc. 62-2 at 37. As to the second factor, consideration of the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person, the arbitration panel concluded that "there is no reason to believe that [Silver] is commonly known as the disputed domain name <billyfuccillo.com>." *Id.* at 37. The third and fourth factors consider a person's prior use, if any, of the domain name in connection with a bona fide offering of goods or the person's bona fide noncommercial or fair use of the mark. Specifically, the arbitration panel found that Silver's use of the billyfuccillo.com domain name "constitutes *neither* a bona fide offering of goods and services . . . *nor* a legitimate noncommercial or fair use of the name . . . ." *Id.* at 37 (emphasis added).

The fifth factor considers "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i). The arbitration panel addressed this issue, finding:

> [T]he panel accepts Complainant's contention that the disputed domain name *resolves ultimately to a website that offers competing goods and services*. As such, the Panel finds that the Respondent *intends to disrupt*

11

> *Complainant's business* and thus is guilty of bad faith registration and use of the disputed domain name . . . .
>
> Furthermore, Respondent's use of the disputed domain name for redirection, as described above, is *strong evidence of his intention to gain commercially due to the likelihood of confusion between the disputed domain name and Complainant's marks as to the source, sponsorship, affiliation or endorsement of the goods and services on the competing website.* Complainant has submitted clear evidence that one Internet user, who sought Complainant's products, felt misled by the disputed domain name, which indeed sent him to the website of a third party. Therefore, the Panel views this diversion as registration and use of the disputed domain name in bad faith . . . .

Doc. 62-2 at 38 (emphasis added). The ninth factor considers whether the mark is "distinctive and famous." The arbitration panel concluded the trademarks "FUCCILLO and BILLY FUCCILLO acquired a secondary meaning relating to automotive products and services." Doc. 62-2 at 35. Courts have recognized that "a mark is distinctive or famous . . . [if it] has acquired secondary meaning." *Noveshen v. Bridgewater Assocs.*, LP, 47 F. Supp. 3d 1367, 1375 (S.D. Fla. Sept. 22, 2014) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). Thus, the arbitration panel addressed the ninth factor as well. In reviewing Plaintiffs' motion and the findings of the arbitration panel, the Court now concludes that "bad faith intent" was a critical and necessary part of the arbitration. Therefore, prong three in establishing issue preclusion has been met.

    4.    *Did the parties have a full and fair opportunity to litigate in prior action?*

The final prong considers whether Defendant had a "full and fair opportunity as well as incentive to litigate the issue." As demonstrated by the filings, Silver was represented by counsel throughout the arbitration process. His counsel made two substantive submissions in the arbitration proceeding in his defense. Docs. 62-8; 62-9. Representation by counsel and the opportunity to submit written argument and evidence are sufficient to meet the "full and fair opportunity" requirement of issue preclusion. *See Richards v. Sen*, 825 F. Supp. 2d 1259, 1263 (S.D. Fla. 2010),

aff'd 418 F. App'x 921, 922 (Fed. Cir. 2011) ("[T]here can be no doubt that Richards was afforded a full and fair opportunity to litigate the issue, as he was represented by counsel—the same counsel representing him here—who had ample opportunity to present written argument and evidence."). The Court also finds persuasive Plaintiffs' argument that Silver's vigorous defense in the arbitration through counsel establishes that Silver was incentivized to litigate the issue in that proceeding. Doc. 62 at 8 (citing *Arch Specialty Ins. Co. v. Gulfstream Crane LLC*, No. 12-61015, 2013 U.S. Dist. LEXIS 56428, at *7-8 (S.D. Fla. Apr. 19, 2013)). On this record, the Court concludes the fourth prong in establishing issue preclusion has been met. Accordingly, as Plaintiffs have demonstrated all necessary elements for the doctrine of issue preclusion, the Court may give preclusive effect to the arbitration panels findings and conclusions in considering the Plaintiffs' claims for violations of the Anticybersquatting Consumer Protection Act (Count I) and Florida's right-of-publicity statute (Count V).

### C.     Count I – Cyberpiracy

Count I alleges a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). Section 1125(d)(1)(A) of the ACPA makes a person

> liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> > (i) has a bad faith intent to profit from that mark . . . ; and
> >
> > (ii) registers, traffics in, or uses a domain name that—
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . . .

Thus, "[t]he ACPA creates a cause of action against a person who, in bad faith, 'registers, traffics in, or uses' an internet domain name confusingly similar or, in some cases, dilutive to a mark." *1-*

13

*800-411-I.P. Holdings, LLC v. Ga. Injury Ctrs., LLC*, 71 F. Supp. 3d 1325, 1328 (S.D. Fla. 2014) (citing 15 U.S.C. § 1125(d)(1)(A)). As noted above, to prevail under the ACPA, "a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A.*, 203 F. App'x at 256.

This Court previously noted that the arbitration panel found two of the three Plaintiffs had common law rights to the marks "Billy Fuccillo" and "Fuccillo." Doc. 58 at 6; *see also* Doc. 62-2 at 33–34. Of significance, Plaintiff Fuccillo Enterprise was not a party to the arbitration. Notwithstanding, Fuccillo Enterprise seeks to utilize the preclusive effect of the arbitration decision to its benefit against Silver. While it is true that a plaintiff who was not a party to a prior action *may* offensively prevent a defendant from relitigating issues decided against the defendant in the prior proceeding, this doctrine may not be applied when it is unfair to the defendant. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–31 (1979). While the finding that Silver has no entitlement to use the marks may be used against Silver, the issue of Fuccillo Enterprise's common law right to the subject marks was never litigated or determined by the arbitration proceeding. Thus, to the extent that Plaintiff Fuccillo Enterprise seeks to recover against Silver under the ACPA claim, it still must prove that it holds an interest in the marks as that particular determination as it relates to Fuccillo Enterprise was not made by the arbitration panel.

In support of their motion, Plaintiffs submit the 2014 electronic Articles of Incorporation for Plaintiff Fuccillo Enterprises of Florida, Inc., which identifies Billy Fuccillo as occupying all officer and director roles. Doc. 62-6. But this does not establish that Fuccillo Enterprise holds common law interest in the marks, particularly where the arbitration panel's decision that Billy

14

Fuccillo and Fuccillo Auto held interests in the marks was based on the fact that they had been operating a large automotive retail and service business using the marks since at least 1989 in New York. *See* Doc. 62-2 at 33. Accordingly, because the Court finds on this record that Plaintiff Fuccillo Enterprise has failed to proffer evidence to support that it has common law rights to the marks "Billy Fuccillo" and "Fuccillo," the second motion for summary judgment is due to be denied as to Plaintiff, Fuccillo Enterprise.

As for Plaintiffs, Billy Fuccillo and Fuccillo Auto, it has been established that they have common law rights to the marks "Billy Fuccillo" and "Fuccillo" and that the marks have acquired a secondary meaning. In this regard, the arbitration panel found:

> Complainant[5] has contended, with ample supporting submissions and without contradiction from [Silver], that Complainant has conducted and promoted its automotive business for decades under dealerships that expressly contain Complainant's owner's surname, Fuccillo, in the respective company or dealership name (i.e., Fuccillo Automotive Group, Fuccillo Ford, Fuccillo Mitsubishi, Fuccillo Imports, etc.). Moreover, in many advertisements and print media articles, the owner's full name, Billy Fuccillo, is mentioned clearly and directly in connection with the sale and service of autos through these dealerships. As a result of long, continuous use and promotion in commerce of those names by Complainant, the Panel concludes that Complainant's trademarks, FUCCILLO and BILLY FUCCILLO, have acquired secondary meaning relating to automotive products and services, thus securing for Complainant common law rights in those marks.

Thus, Plaintiffs, Billy Fuccillo and Fuccillo Auto, have established the first element of their ACPA claim. The second element Plaintiffs must prove on their claim is that the Defendant's domain name is identical or confusingly similar to the Plaintiffs' mark. The arbitration panel found that "disputed domain name [billyfuccillo.com] is identical or confusingly similar to a trademark in which Complainant has rights." Doc. 62-2 at 36. Accordingly, the second element is satisfied.

---

[5] "Complainant" refers to Plaintiffs Billy Fuccillo and Fuccillo Auto. Doc. 62-2 at 27.

On the final element—whether the Defendant registered or used the domain name with a bad faith intent to profit—the arbitration panel found that "the disputed domain name was registered and is being used in bad faith" by Silver. Doc. 62-2 at 38.  The panel based its findings on the fact that the disputed domain name, which was registered by Silver, directed internet users to a website that offers competing goods and services.  As such, the arbitration panel concluded that Silver intended to disrupt Plaintiffs' business and gain commercially due to the likelihood of confusion by internet users.  In support, Plaintiffs submit the report of an internet user who sought Plaintiffs' products by searching billyfuccillo.com on the internet and was redirected to the website of automotive dealer, Century Kia, who sells competing products and services. As discussed above, the arbitration panel found the redirection of the website to a competitor to be "strong evidence of [Silver's] intention to gain commercially." Doc. 62-2 at 38.  Thus, the Court finds that Plaintiffs have established the third element of their ACPA claim.

Having proven the elements for a claim against Silver for violation of the ACPA, Plaintiffs Billy Fuccillo and Fuccillo Auto are entitled to summary judgment as to liability on Count I of Plaintiffs' Complaint, as no genuine issues of material fact exist.

### D.     Count V – Florida's Right-of-Publicity Statute

Plaintiff Billy Fuccillo seeks summary judgment on his claim that Silver violated Florida's right-of-publicity statute. Section 540.08 of the Florida Statutes governs the unauthorized publication of a person's name or likeness. In pertinent part, the statute provides that:

> No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
>
> (a) Such person; or
> (b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness . . . .

Fla. Stat. § 540.08(1). In the event that a person does use the name, portrait, photograph, or other likeness of a natural person without such consent, the person whose likeness is used "may bring an action to enjoin such unauthorized publication, printing, display or other public use, and recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages." Fla. Stat. § 540.08(2) (2019).

In evaluating a claim under this statute, the Court must first examine whether the defendant used the plaintiff's name, portrait, photograph, or other likeness without the plaintiff's consent. *Taylor v. Trapeze Mgmt.*, LLC, No. 0:17-cv-62262-KMM, 2019 WL 1468515, at *7 (S.D. Fla. Feb. 27, 2019). The Court then determines whether such use was for trade or any commercial or advertising purposes. *Id.* (citing *Lane v. MRA Holdings*, LLC, 242 F. Supp. 2d 1205, 1212 (M.D. Fla. 2002)). "Under Fla. Stat. § 540.08, the terms 'trade,' 'commercial,' or 'advertising purpose' mean using a person's name or likeness to directly promote a product or service." *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1213 (M.D. Fla. 2002) (citing *Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir.1983)); *see also Tyne v. Time Warner Entm't Co.*, 901 So. 2d 802, 807 (Fla. 2005) ("The names, likeness, and other indicia of a person's identity are used for the purposes of trade if they are used in advertising the user's goods or services.") (quoting Restatement (Third) of Unfair Competition § 47 (Am. law inst. 1995)).

On the first element, the Court previously found that Silver conceded that he used Billy Fuccillo's name without Billy Fuccillo's consent. Doc. 58 at 16; *see also* Doc. 1 ¶ 26; Doc. 19 ¶ 26.  Thus, this element is met.

On the second element of this claim, Plaintiff must show that Silver used the name Billy Fuccillo for "trade, advertising, or commercial purpose." Plaintiff relies on the district court's opinion in *Tartell v. South Florida Sinus & Allergy Center, Inc.*, No. 12-61853-CIV, 2013 WL

17

12036430 (S.D. Fla. Jan. 28, 2013), in which that court states, in *dicta*, that "[u]sing [Plaintiff's] name in the domain name of a website to redirect patients to Defendants' own website would most likely violate [Fla. Stat. § 540.08]." *Id.* at *10. While this case may provide some minimal guidance, the Court finds instructive the Fourth District Court of Appeal's discussion in *Loft v. Fuller*, 408 So. 2d 619, 623 (Fla. 4th DCA 1981), as to what is meant by trade, commercial or advertising purposes in the context of a § 540.08 claim.

> In our view, Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher. Thus, the publication is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else.

*Loft*, 408 So. 2d at 622–23. This is precisely what Billy Fuccillo claims Silver did here—associated Billy Fuccillo's name with Century Kia's automotive products and services. The arbitration panel found that "in many advertisements and print media articles, the owner's full name, Billy Fuccillo, is mentioned clearly and directly in connection with the sale and service of autos through these [Fuccillo] dealerships." Doc. 62-2 at 35. By redirecting the billyfuccillo.com domain name to the competing Century Kia website, Silver used Billy Fuccillo's name to promote his competitor's products.[6] As no genuine issues of material fact exist, the Court finds Plaintiff Billy Fuccillo is entitled to summary judgment as to liability on his claim under Fla. Stat. § 540.08 in Count V. Accordingly, it is hereby

**ORDERED:**

---

[6] Whether or not Plaintiffs can prove damages as a result of the unauthorized use of Fuccillo's name is a separate issue and is not before the Court on this motion.

18

1. Plaintiffs' Motion for Acceptance of Plaintiffs' Statement of Undisputed Material Facts (Doc. 65) is **GRANTED** as set forth in this Order.

2. Plaintiffs' Notice of Second Motion for Summary Judgment (Doc. 62) is **GRANTED** to the extent that the Court grants summary judgment on liability in favor of Plaintiffs, William B. Fuccillo and Fuccillo Automotive Group, Inc., on the ACPA claim in Count I of Plaintiffs' Complaint and the Court grants summary judgment on liability in favor of Plaintiff, William B. Fuccillo, on the § 540.08 claim in Count V.

3. Plaintiffs' Notice of Second Motion for Summary Judgment (Doc. 62) is **DENIED** as to Plaintiff, Fuccillo Enterprises of Florida, Inc., on Count I.

4. By separate order, the Court will schedule a status conference to discuss scheduling the remaining matters for trial on damages or damages and liability, as appropriate.

**DONE AND ORDERED** in Tampa, Florida on September 28, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Trent Silver, *pro se*
          Counsel of Record